HATCHER v HATCHER

Docket No. 58689. Submitted June 15, 1983, at Lansing.—Decided October 24, 1983.

Dorothea Hatcher brought a divorce action in Wayne Circuit Court against Rufus Hatcher. Roland L. Olzark, J., granted the divorce, finding that both parties were equally at fault in the breakdown of the marriage. Initially, the trial court ordered an equal division of the marital assets, including awarding plaintiff a one-half interest in defendant's fully vested noncontributory pension plan. No alimony was awarded. Thereafter, the trial court, on its own motion, set aside the property settlement and ordered an equal division of the marital assets other than the pension interest and awarded plaintiff alimony of $125 per month until plaintiff's death or remarriage or until further adjustment by the court, but declined to make any immediate pension-based alimony award because there was no present income from the pension, holding in abeyance the determination of the amount of any pension-based alimony award until the pension benefits began. Defendant appeals. *Held:*

1. Since plaintiff requested alimony in her complaint, the trial court could properly award alimony even though plaintiff did not pursue that relief at trial.

2. It was error for the trial court to fail to set forth its

REFERENCES FOR POINTS IN HEADNOTES

[1, 8] 4 Am Jur 2d, Appeal and Error § 135.

[1] 5 Am Jur 2d, Appeal and Error § 868.

[2] 4 Am Jur 2d, Appeal and Error § 137.

24 Am Jur 2d, Divorce and Separation § 625.

[3] 24 Am Jur 2d, Divorce and Separation §§ 369, 535, 576 *et seq.,* 642 *et seq.,* 657 *et seq.,* 666 *et seq.*

[4-7, 9] 24 Am Jur 2d, Divorce and Separation §§ 664, 905, 921, 949.

[4-7, 9] Pension or retirement benefits as subject to award or division by court in settlement of property rights between spouses. 94 ALR3d 176.

Pension of husband as resource which court may consider in determining amount of alimony. 22 ALR2d 142.

[8] 24 Am Jur 2d, Divorce and Separation § 948.

[10] 24 Am Jur 2d, Divorce and Separation § 870 *et seq.*

[11] 24 Am Jur 2d, Divorce and Separation §§ 631, 872, 925.

findings of fact with respect to the award of alimony; however, that error does not preclude appellate review, since the Court of Appeals reviews divorce cases *de novo* on the record.

3. Since the granting of alimony is a matter addressed to the discretion of the trial court which will not be overturned on appeal unless the Court of Appeals would have reached a different result, and since the trial court's decision to grant alimony was not clearly improper, the award of alimony is affirmed.

4. Defendant's interest in his fully vested noncontributory pension plan was properly treated as a marital asset subject to distribution, since that interest has a reasonably ascertainable present value and is not a mere expectancy, even though the payment of pension benefits was subject to the contingency that defendant survive until he retires.

5. The method of distribution of marital assets is addressed to the discretion of the trial court. A trial court may properly hold in abeyance the distribution of pension plan interests until the pension plan benefits are started and may distribute those benefits by means of adjusting the level of alimony payments. The trial court's decision to hold in abeyance a determination with respect to the distribution of the pension plan interests until the pension benefits commenced was not an abuse of discretion and was fair and equitable under the circumstances.

Affirmed.

1. DIVORCE — FINDINGS OF FACT — APPEAL — *De Novo* REVIEW.

It is error for a trial court in a divorce action to fail to make findings of fact upon the record relative to the court's award of alimony; however, such failure to make findings of fact upon the record does not preclude appellate review, since the Court of Appeals reviews divorce cases *de novo* on the record.

2. DIVORCE — ALIMONY — APPEAL.

The awarding of alimony in a divorce case is within the discretion of the trial court; the trial court's award of alimony will not be reversed on appeal unless the Court of Appeals is convinced that had it been sitting in the lower court's position it would have reached a different disposition.

3. DIVORCE — ALIMONY.

Factors to be considered in determining whether alimony should be awarded in a judgment of divorce include: (1) the past relations and conduct of the parties; (2) the length of the marriage; (3) the ability of the parties to work; (4) the source of and amount of property awarded to the parties; (5) the age of

the parties; (6) the ability of the parties to pay alimony; (7) the present situation of the parties; (8) the needs of the parties; (9) the health of the parties; (10) the prior standard of living of the parties and whether either is responsible for the support of others; and (11) general principles of equity.

4. DIVORCE — MARITAL ASSETS — PENSION PLANS.

An employee's interest in a noncontributory pension plan is distributable as a marital asset to the extent that the employee's interest in the plan has a reasonably ascertainable present value and is more than a mere expectancy; the party seeking to have the pension plan treated as a marital asset bears the burden of proving a reasonably ascertainable value; once the party establishes that the pension holder has a valuable vested interest in the plan, the interest in the plan is presumptively considered to be a marital asset and the pension holder bears the burden of showing that, due to the speculative nature of the plan or problems with its solvency, there is a high probability that a pension will not be received.

5. DIVORCE — MARITAL ASSETS — PENSION PLANS.

An interest in a noncontributory pension plan is treated as a marital asset because such plans are deemed to be bargained-for consideration in lieu of a higher present salary.

6. DIVORCE — MARITAL ASSETS — PENSION BENEFITS.

An employee's interest in a vested pension which is determined to be a marital asset should be distributed even if the pension is subject to the contingency or expectancy that the employee survive to a certain age or a specific number of years.

7. DIVORCE — MARITAL ASSETS — PENSION PLANS.

The contingent possibility that a pension plan may not be solvent at the time an employee wishes to draw funds from the plan does not eliminate per se the consideration of such pension interests as a marital asset for the purpose of the distribution of assets in a divorce.

8. DIVORCE — MARITAL ASSETS — DIVISION OF PROPERTY — APPEAL.

The Court of Appeals will not disturb a trial court's division of marital assets in a divorce action unless it is convinced that it would have reached a different result had it been sitting in the trial court's position.

9. DIVORCE — MARITAL ASSETS — PENSION PLANS.

A trial court, in a divorce action, after determining that an employee's interest in a pension plan is a marital asset, may, in

its discretion, defer distribution until the pension benefits are received, order immediate distribution of the pension interests by means of adjusting the distribution of other marital assets, or order distribution of the pension interests by means of periodic payments.

10. DIVORCE — MARITAL ASSETS — DIVISION OF PROPERTY — EQUITY.
   The only requirement for an award of marital assets in a divorce action is that the award result in a fair and equitable distribution of the marital assets.

11. DIVORCE — DIVISION OF PROPERTY — ALIMONY — MARITAL ASSETS.
   A trial court in a divorce action may make an award of alimony which compensates for or takes into account the court's division and distribution of marital assets.

*Bert Fossee, III,* for plaintiff.

*Matthew R. Rumora,* for defendant.

Before: M. J. KELLY, P.J., and SHEPHERD and R. I. COOPER,* JJ.

SHEPHERD J. Plaintiff and defendant were divorced and a judgment entered in Wayne County Circuit Court on June 17, 1981. Defendant appeals as of right, claiming that the trial court erred in awarding plaintiff alimony and in determining that defendant's pension plan was a distributable marital asset.

FACTS

The parties were married in 1951. They had three children, all of whom were adults at the time of the divorce. Plaintiff and defendant began living apart in 1978 when plaintiff moved out of the marital home. At the time of trial, plaintiff had been employed for four days as a dental assistant, after completing a dental assistant pro-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

gram at Shaw College. Her last previous job had been as a rest-area attendant, a job she had held from August to December, 1979. Plaintiff also received $125 per month in rental income generated by the lower half of the marital home.

Defendant was employed by Chevrolet Gear and Axle. He had worked there since 1946 and was making $9.33 per hour. He had a noncontributory retirement pension plan through his employer.

Each party attributed the breakdown of the marriage to the other: Plaintiff testified that defendant threatened her and eventually caused her to leave him; defendant, on the other hand, accused plaintiff of acting irrationally and of abandoning him.

At trial, a pension and insurance representative for defendant's employer testified regarding the salient features of defendant's pension plan. The pension was funded entirely by defendant's employer. In defendant's case, it was fully vested and defendant would commence receiving benefits immediately upon retirement. Had defendant retired at the time of trial, he would have received $810 per month until age 62 and then $540.71 per month for the remainder of his life. His pension benefits would be subject to further increases as new contracts were negotiated between his employer and his union and the amount of the benefits would also increase with each year defendant worked before retiring. In the event defendant died unmarried, either before or after his retirement, there would be no benefit to his estate under the pension plan. A professional actuary testified that defendant's pension had a present value, before taxes, of $101,000. Defendant testified that he had no immediate plans for retirement since his benefits would be considerably less than his

current wages and, by postponing retirement, he ensured the receipt of greater pension benefits.

At trial, the judge and the parties' attorneys discussed at length the possible methods of dividing the various assets. In granting the divorce, the trial court initially ordered a 50/50 division of all assets, awarding plaintiff half of defendant's pension benefits as well as half of the remaining assets. No alimony was awarded.

On June 24, 1980, however, the trial court, on its own motion, set aside the above property settlement. The attorneys were asked to submit briefs on the issue of distribution and on November 21, 1980, the trial court issued its final written opinion. While finding the pension to be a marital asset, the trial court noted the difficulty inherent in its distribution, since defendant had no present assets with which to pay plaintiff her share of the pension and since benefits might never actually be paid should defendant die before retirement. After reviewing several recent decisions of this Court. dealing with pension distributions, the trial court finally determined that the best way to distribute plaintiff's share to her was via alimony. As there was no present income from the pension, however, the court declined to award pension-based alimony at that time, but somewhat reluctantly reserved its "determination of what, if any, alimony should be granted by reason of this source of income to a time when payment of the pension benefits actually begin". The rest of the marital assets were divided as follows: Defendant was awarded his one-eighth share, valued at $6,500, of a parcel of land in Alabama co-owned with his seven siblings, but was ordered to pay to plaintiff $3,250 upon entry of the divorce judgment. Defendant was also awarded the marital home, valued at $17,000, and was ordered to pay plaintiff $8,500 within 60 days

of judgment. The parties' savings accounts and bonds were divided equally and each was to retain the household furnishings and vehicle in his or her possession. Defendant was also ordered to pay to plaintiff $125 in alimony per month, payment to cease upon her death or remarriage and subject to further adjustment by the trial court.

## ALIMONY

Defendant argues that the trial judge abused his discretion in awarding plaintiff alimony. Defendant bases his claim on several factors: first, that plaintiff never requested alimony; second, that plaintiff was the cause of the breakdown in the marital relationship; and, third, that defendant had already paid for plaintiff's education and therefore had prepared her to support herself. Further, defendant claims that the trial court failed to make requisite findings of fact.

The first and third factors are the most easily disposed of here. Although plaintiff did not request alimony at trial, she had made such a request in her complaint. The trial judge, therefore, could properly award alimony. As to plaintiff's education, there is no evidence in the lower court record to support defendant's claim that he paid for plaintiff's schooling. To the contrary, since plaintiff completed her education in 1981 and the parties had been separated since 1978, it is more likely that the trial court assumed that plaintiff paid for her own education. Plaintiff testified that while attending school she had received $176 per month in college work-study money plus the $125 per month she received from the rental of the lower half of the marital home.

It is true, as defendant points out, that the trial

court gave no reason for awarding plaintiff alimony. Pursuant to GCR 1963 517.1, the trial court should have placed its findings of fact upon the record in order to apprise this Court of how and why the decision to award alimony was made. The absence of findings of fact here, however, does not preclude appellate review, since this Court reviews divorce cases *de novo* on the record. *McLain v McLain,* 108 Mich App 166, 171; 310 NW2d 316 (1981). An award of alimony is discretionary with the trial court, *Feldman v Feldman,* 55 Mich App 147, 154; 222 NW2d 2 (1974), and this Court will not modify such an award unless it is convinced that it would have reached a different result had it been sitting in the trial court's position. *Boyd v Boyd,* 116 Mich App 774, 786; 323 NW2d 553 (1982).

In determining whether an award of alimony is appropriate, the trial court should consider the following factors:

(1) the past relations and conduct of the parties;

(2) the length of the marriage;

(3) the parties' ability to work;

(4) the source of and amount of property awarded to the parties;

(5) the age of the parties;

(6) the parties' ability to pay alimony;

(7) the present situation of the parties;

(8) the needs of the parties;

(9) the health of the parties;

(10) the parties' prior standard of living and whether either is responsible for the support of others; and

(11) general principles of equity.

*Boyd, supra,* pp 786-787; *McLain, supra,* pp 171-172.

Applying these factors, we conclude that the

trial court did not abuse its discretion in awarding alimony. The court heard conflicting testimony from both parties, but found no fault or misconduct by either. Instead, the court stated that the only equitable solution would be to split the marital assets in half.

The parties' marriage had lasted 29 years. At the time of the divorce, defendant was 54 years old and plaintiff was 47. Although both were in good health and employed at the time of trial, defendant earned over twice as much as plaintiff. Plaintiff had worked only occasionally during the marriage. Her dental assistant career had just begun, at a rate of pay lower than that of other jobs she had held. While she would be eligible for social security benefits upon her retirement, the amount of such benefits would be substantially less than what defendant would receive from the combination of social security benefits and benefits from his pension.

Except for the pension, the marital assets were relatively minimal and were divided equally. The trial court found that the parties had contributed equally to the accumulation of marital assets. Their children were grown and neither party had other dependents. Given the disparity in incomes and the absence of any other major debts or mitigating factors, it appears that defendant was financially able to pay the $125 per month alimony payments.

In light of these facts, the trial court's decision to award alimony to plaintiff was not improper. *Feldman, supra,* cited by defendant in support of his argument for reversal, is inapposite. There the marriage had been brief and the plaintiff wife, who had been adulterous, was relatively young. The trial court's award of alimony in the present case is affirmed.

Defendant next argues that his interest in his pension was a mere expectancy and contingent upon both the date of his retirement and the date of his death. Since defendant had no immediate plans for retirement and since his estate would receive no pension benefits at all upon his death, the pension was too uncertain to distribute and the trial judge should not have left open the possibility of a later alimony award in order to effectuate a distribution of pension benefits to plaintiff. Defendant errs, however, in his assertion that the uncertainties attending the payment of his pension benefits rendered it nondistributable.

Defendant's pension plan was vested and funded entirely by his employer's contributions, *i.e.*, it is a noncontributory pension plan. In *Miller v Miller,* 83 Mich App 672, 677; 269 NW2d 264 (1978), this Court held that a noncontributory pension plan is distributable as a marital asset to the extent that it has a reasonably ascertainable present value and the employee's interest in it is more than a mere expectancy. The party seeking to include the pension fund as a marital asset bears the burden of proving a reasonably ascertainable value. Once that party establishes that the pension holder has such a valuable vested interest in the plan, it is presumptively considered a marital asset. The pension holder must then show that, due to the speculative nature of the plan or problems with its solvency, there is a high probability he will never receive the pension. *Bolt v Bolt,* 113 Mich App 298, 302; 317 NW2d 601 (1982).

The rationale for including noncontributory pension plans as marital assets is that such plans must be deemed to be bargained-for consideration

in lieu of a higher present salary. If, instead of the pension, the employer had offered higher wages, these monies would have been available to the parties during the marriage. The result then would have been either a larger marital estate available for distribution upon divorce or at least a higher standard of living enjoyed by both parties during the marriage. *Boyd, supra,* p 781. Thus, any vested pension which is deemed a marital asset should be distributed or accounted for even if the plan is subject to the contingency that the employee survive to a certain age or work a specific number of years. *Id.*

The contingent and therefore undistributable pension plan referred to in *Miller, supra,* which is relied upon by defendant, includes only those plans which are not vested, *e.g.,* the plan could be unilaterally terminated by the employer. *Bolt, supra.* It does not include the general contingency that the plan may not be solvent at the time the employee wishes to receive his benefits, since this risk is inherent in any plan. *Bolt, supra,* pp 301-302. It also does not include the contingency that the employee may die before he completes his expected life span and therefore will not receive all his benefits. *Boyd, supra,* p 779; *Gibbons v Gibbons,* 105 Mich App 400, 403; 306 NW2d 528 (1981). The mere fact that the pension holder is still working and not receiving pension benefits at the time of the divorce (although he could collect benefits by retiring immediately) does not preclude ascertainment of its value and distribution according to the plan's present cash value. *Tigner v Tigner,* 90 Mich App 787, 791; 282 NW2d 481 (1979). See also *Gibbons, supra,* p 401. Even where, as here, the pension holder's estate would receive nothing under the plan if the holder died before retirement, the pension must still be considered a

marital asset if it is vested and has a reasonably ascertainable present value. See *Boyd, supra,* pp 778-779; *Gibbons, supra.*

Plaintiff here sustained her burden of proving the reasonably ascertainable present value of defendant's pension through the actuary's testimony. The mere possibility that no benefits will be paid should defendant die before retirement does not preclude the inclusion of the pension fund in the parties' distributable marital assets. The trial court, therefore, correctly ruled that plaintiff was entitled to an interest in defendant's pension fund.

Once it had determined that defendant's pension was a marital asset, the division and method utilized to effect its distribution were matters for the trial court's discretion. This Court will not reverse the trial court's division of property unless it is convinced that it would have reached a different result had it been sitting in the lower court's position. *McLain, supra,* pp 168-169. In this case, the trial judge considered the pension to be the major complicating factor in the division of the marital assets. The pension benefits were not collectible until defendant retired and would cease upon his death. Defendant currently had no plans to retire and the amount of benefits he would receive was likely to increase as a result of increased time on the job and the negotiation of subsequent labor contracts. At the time of trial, the valuation did not squarely meet the certainty test suggested in several appellate decisions, although this uncertainty was largely the result of defendant's unilateral, albeit justifiable, refusal to retire. Under these circumstances, the trial court believed that it would be grossly unfair to order defendant to pay a set percentage of the pension's value. There were insufficient present assets from

which defendant could make such payments and the pension benefits might never actually be paid. On the other hand, the court found that it would be equally unfair to preclude plaintiff from participation in the pension fund which had accumulated during the parties' marriage and from which defendant could conceivably begin collecting benefits the day after the divorce judgment was entered. The court therefore determined that the most feasible way to award plaintiff her share of the pension was through a separate pension-related award of alimony. Since defendant was not then receiving benefits, however, the actual award of pension-related alimony would be deferred until defendant retired. At that time, a hearing would be held to determine what, if any, alimony should be granted to plaintiff by virtue of defendant's receipt of pension income. Although the trial court disliked reserving this determination, it concluded that it was the best way to obtain an equitable result.

Deferring distribution of pension benefits until they are received by the pension-holding spouse is an acceptable method of distributing that marital asset. *Boyd, supra,* p 783; *Chisnell v Chisnell,* 82 Mich App 699; 267 NW2d 155 (1978), *lv den* 403 Mich 844 (1978), *cert den* 442 US 940; 99 S Ct 2881; 61 L Ed 2d 310 (1979), *reh den* 444 US 887; 100 S Ct 187; 62 L Ed 2d 121 (1979). Other methods of distributing benefits also would have been acceptable, such as an immediate distribution in the form of additional marital assets equalling plaintiff's share of the pension benefits as determined by the trial court while allowing defendant to retain the entire pension itself, *Watling v Watling,* 127 Mich App 624; 339 NW2d 505 (1983); *Boyd, supra,* pp 782-783, or an immediate distribution of

a portion of plaintiff's interest in the pension, with delayed payment of the remainder. *Boyd, supra,* p 783, fn 6. In the instant case, plaintiff was to receive an equitable share of defendant's pension in the form of alimony. Although the trial court classified the distribution of plaintiff's share of the pension as alimony rather than marital property, the eventual result sought and achieved by the trial court is equitable and allowable. See *Boyd, supra.* We note in this context that neither party has complained about the manner of distribution per se. Defendant objects to the classification of his pension as a marital asset while plaintiff argues that the trial judge intended a deferred distribution as described in *Boyd* and requests affirmance of the trial court's judgment.[1]

Once a trial court has properly recognized property to be a marital asset, its division is within the trial court's discretion. *Boyd, supra; Abadi v Abadi,* 73 Mich App 78; 259 NW2d 244 (1977). Although the bulk of the marital assets in the present case were divided in half, the trial court was under no obligation to similarly divide the pension. It was free to award those assets to each party which best suited their needs and circumstances, even to the extent of awarding plaintiff none or all of defendant's pension. See *Grotelueschen v Grotelueschen,* 113 Mich App 395; 318

---

[1] We acknowledge some concern over the possibility that plaintiff might ultimately receive none of the pension should the trial court determine that the pension benefits, when received by defendant, are insufficient to bear an additional alimony award. We also point out that not every distribution of marital assets may properly be even partially effected via alimony. See, *e.g., Woodworth v Woodworth,* 126 Mich App 258; 337 NW2d 332 (1983). We are faced with neither of these issues, however, since plaintiff here has expressed her satisfaction with the trial court's methods of distribution. We need not decide, therefore, whether we would reach the same result if the trial court's failure to make immediate and definite provision for the pension benefits was the subject of an objection by plaintiff.

NW2d 227 (1982); *Schilleman v Schilleman,* 61 Mich App 446; 232 NW2d 737 (1975). The only requirement is that the award result in a fair and equitable distribution. *Ripley v Ripley,* 112 Mich App 219; 315 NW2d 576 (1982); *Patrick v Patrick,* 99 Mich App 132; 297 NW2d 635 (1980). The trial court may award alimony which compensates for or takes into account its property division. *Trombley v Trombley,* 313 Mich 80; 20 NW2d 818 (1945); *Boyd, supra,* pp 786-787; *McLain, supra,* pp 171-172. It is clear that this is what occurred in the present case. In its opinion, the trial court specifically recognized that the pension was a marital asset. Given the relatively small amount of assets and the fact that defendant was independently ordered to pay alimony to plaintiff, the court concluded that it would be inequitable to require immediate payment to plaintiff of her share of the pension. Accordingly, it determined that the most equitable method of accounting for the pension would be in the form of alimony, the amount to be determined at the time defendant retired when all relevant circumstances and needs of the parties could be considered and the benefits were being received. See *Grover v Grover,* 27 Mich App 192; 183 NW2d 352 (1970). We note that this alimony award was separate from the alimony awarded plaintiff outright at the time of the divorce. Although the latter award could be modified upon a proper showing of a change in the parties' circumstances, it was unrelated to the alimony tied to defendant's pension. The amount of that alimony was a matter specifically reserved for later hearing by the trial court.

The resolution reached by the trial court was neither improper, see *Holbern v Holbern,* 91 Mich App 566; 283 NW2d 800 (1979), nor an abuse of

the trial court's discretion. We are not convinced that we would have reached a different resolution had we occupied the position of the trial court. See *Grotelueschen, supra; Westrate v Westrate,* 50 Mich App 673; 213 NW2d 860 (1973). Given the parties' satisfaction with (or lack of specific objection to) the method chosen by the trial court to distribute the pension and the desirable and equitable result reached, this Court will not disturb the trial court's judgment.

Affirmed. Costs to plaintiff.